IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT D. OLSON,

                Plaintiff,

v.                                           OPINION and ORDER

KILOLO KIJAKAZI,
Acting Commissioner of                         21-cv-181-jdp
Social Security,[1]

                Defendant.

---

Plaintiff Robert Olson seeks judicial review of a final decision of defendant Kololo Kijakazi, Acting Commissioner of the Social Security Administration, finding Olson not disabled within the meaning of the Social Security Act prior to June 1, 2020. Olson contends that the administrative law judge (ALJ), Corrine McLaughlin, did not adequately assess Olson's symptoms and failed to support her assessment of Olson's residual functional capacity (RFC). The ALJ's opinion is supported by substantial evidence, and any error in her evaluation of Olson's limitations is harmless. The court will affirm the commissioner's decision.

BACKGROUND

Olson sought disability insurance benefits and supplemental security income based on physical impairments, alleging disability beginning on October 15, 2015. R. 317.[2] Olson's

---

[1] The court has updated the caption pursuant to Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 11.

application was denied following a hearing by an ALJ. R. 146. Olson appealed, and the Appeals Council remanded the case for a new hearing. R. 162.

Olson had a new hearing before a different ALJ. In a written decision, the ALJ found that Olson suffered from several severe impairments: degenerative disk disease, hip osteoarthritis, lipoma at the left hip, tinnitus, and hearing loss. R. 18. The ALJ determined that Olson did not meet the criteria for any listed disability. *Id.* The ALJ ascribed to Olson the RFC to perform light work with some additional postural and environmental limitations to accommodate Olson's pain and hearing issues. R. 19.

The ALJ determined that prior to June 1, 2020, Olson was not disabled because, based on the testimony of a vocational expert, he could perform a significant number of jobs in the national economy, including as a mail clerk, mill operator, and laundry sorter. R. 23. The ALJ then determined that Olson became disabled on June 1, 2020, the day before Olson turned 55 years old. R. 24. On that date, Olson's age category changed to "advanced age," which mandated a finding of disability given Olson's education, work experience, and restriction to light work. R. 24 (citing Medical-Vocational Rule 202.06). The Appeals Council denied review, R. 1, so the ALJ's decision became the final decision of the commissioner.

Olson now appeals, contending that the ALJ erred in finding that he was not disabled prior to June 1, 2020. Olson had sufficient quarters of coverage to remain insured through June 30, 2018, so he must establish disability on or before that date to obtain disability insurance benefits. R. 16.

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Olson contends that the ALJ erred in her evaluation of Olson's subjective complaints about his symptoms and failed to build a logical bridge from the evidence to Olson's RFC.

**A. Subjective complaints**

An ALJ's evaluation of the claimant's testimony about his symptoms is entitled to deference because the ALJ is in a special position to see, hear, and assess witnesses. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). The court will overturn the ALJ's assessment of the claimant's testimony only if it is patently wrong. *Id*.

The ALJ summarized Olson's subjective complaints arising from his back pain and hearing issues. R. 19. Olson said that he can stand for only 15 minutes before he has to sit down or grab something to stop him from falling. He can walk between 50 to 100 feet before he needs to stop to prevent a fall. He also suffers from tinnitus and hearing loss. The constant buzzing and ringing in his ears make it difficult for him to listen or pay attention. He has some hearing loss in his right ear, and he has not been able to hear anything with his left ear since 2015.

The ALJ determined that Olson's medically determinable impairments could be reasonably expected to cause Olson's alleged symptoms. But the ALJ wasn't persuaded that Olson was as limited as he said he was.

The ALJ offered the following reasons for discounting Olson's testimony about his back pain:

- Medical imaging, including MRIs, showed only minimal issues R. 20.

- Olson complained only sporadically to doctors about his pain. R. 20.

- Observations from doctors about issues related to Olson's gait were rare and vague. R. 20.

- Olson frequently did not follow up with referrals or treatment for his back pain. R. 20.

The ALJ also offered several reasons for discounting Olson's testimony about his hearing problems:

- Olson did not report tinnitus to any doctors prior to May 2017, after he filed his application for disability. R. 20.

- Olson reported no difficulty hearing out of his right ear during phone interviews. R. 20.

- Olson declined a follow-up to otology to explore a bone-anchored hearing aid, which can offer relief to people with tinnitus. R. 21.

- There were no objective findings that Olson's tinnitus was distracting, and there is no mention of problems with distractibility anywhere in the record. R. 21.

Olson contends that the ALJ erred in four ways, mostly related to her evaluation of his back pain. Olson first contends that the ALJ improperly discounted his testimony about his pain because of a lack of objective medical evidence. Testimony cannot be disregarded *solely* because it is uncorroborated by objective evidence. *See Hill v. Colvin,* 807 F.3d 862, 869 (7th Cir. 2015). But an ALJ may consider a lack of objective evidence among other factors. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Here, the ALJ provided other bases for why she discounted Olson's testimony, including the long gaps between Olson's complaints about pain.

Second, Olson says that the ALJ did not explain why certain medical evidence did not support his testimony. Dkt. 12, at 14. But ALJ addressed nearly all of the evidence that Olson

4

cites. The ALJ acknowledged that Olson had been diagnosed with lumbar scoliosis, had occasional problems with gait and flexibility, and had occasionally reported pain and discomfort. And the ALJ adequately explained why, despite this evidence, she chose not to fully credit Olson's testimony about his limitations.

The ALJ didn't mention every finding that Olson lists, including Olson's difficulty "toe walking" during physical therapy in 2016. *See* R. 458. But Olson doesn't explain what toe walking is or why it corroborates his testimony that he can only stand for 15 minutes at a time. *See* Dkt. 12, at 14. An ALJ cannot ignore entire lines of evidence that point toward a finding of disability, but the ALJ need not expressly evaluate every piece of evidence in the record. *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). The ALJ acknowledged that there was medical evidence from 2016 demonstrating that Olson had difficulty walking, but that objective findings were too sporadic to corroborate Olson's testimony about the extent of his limitations. The ALJ's failure to address a specific finding from a physical therapy session was not error.

Third, Olson says that the ALJ did not consider all the factors for evaluating symptoms set out in Social Security Ruling 16-3p. Specifically, Olson says that the ALJ needed to discuss whether she considered Olson's daily activities and any aggravating factors. But Olson doesn't identify what limitations on his daily activities that the ALJ should have addressed. *See* Dkt. 12, at 15. An ALJ isn't required to discuss factors that aren't pertinent to evidence in the record. *See* SSR 16-3p. And Olson doesn't explain why his daily activities corroborate his testimony that he can stand for only 15 minutes.

As for aggravating factors, Olson says that his back pain is aggravated by walking more than 100 yards and standing more than 60 minutes, and he cites a note from a 2016 physical

5

therapy session in support of that claim. R. 457. But the ALJ did not ignore the effect of standing or walking on Olson's back pain; she acknowledged that Olson complained that his pain prevented him from walking or standing for extended periods of time. R. 19. And the ALJ's failure to discuss the specific physical therapy note Olson cites was not error. The ALJ acknowledged that medical evidence from 2016 showed that Olson had problems with his gait and flexibility, but she explained that she discounted Olson's subjective complaints because he demonstrated those issues only sporadically. The ALJ did not ignore an entire line of evidence related to Olson's ability to stand or walk, and she was not required to address another isolated finding from 2016.

Fourth and finally, Olson says that the ALJ improperly discounted his complaints based on his failure to seek treatment. An ALJ is required to consider possible reasons for failure to seek treatment before using it as evidence that symptoms are not severe or disabling. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). But during the hearing, the ALJ asked Olson why there were gaps in his treatment history, and Olson responded that he got "fed up" with treatments because no one was coming up with anything. R. 52. Olson now says that he failed to seek treatment or follow up on referrals because he was indigent. Dkt. 12, at 14. Olson also testified that he had no income, but he didn't say that he failed to seek treatment for that reason. R. 54.

Olson says that the ALJ did not address other possible reasons that he did not seek treatment. The ALJ discussed why Olson did not pursue treatment for his hearing problems, R. 21, but she did not discuss why Olson failed to seek treatment for his back pain. The ALJ discounted Olson's complaints in part because of his lack of treatment, R. 20, so she should have discussed possible reasons for his failure to seek treatment for his back in the opinion.

But any error in the ALJ's failure to explain her reasoning on that point is harmless, for two reasons. First, remand on this issue would not lead to a different result. A court will not remand a case to the ALJ for further specification where it is convinced that the ALJ will reach the same conclusion. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Although the court should not attempt to rationalize the ALJ's decision by speculating about the basis for her reasoning, it "serve[s] no purpose to remand [a] case to the ALJ for a statement of the obvious." *Id.* Olson specifically testified that he stopped seeking treatment because he was fed up. Presented with that testimony, no reasonable ALJ would conclude that Olson stopped seeking treatment for some other reason.

Second, the ALJ provided other adequate reasons for discounting Olson's testimony about his back pain. Even if the ALJ errs in evaluating a claimant's subjective complaints, the error is harmless if the ALJ provides some other evidence supporting her determination. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). In addition to the lack of treatment, the ALJ discounted Olson's complaints because they were inconsistent with the minimal imaging findings, the rare objective findings about Olson's gait, and minimal pain complaints. Because the ALJ's assessment of Olson's subjective complaints was not patently wrong, he is not entitled to remand on that ground.

## B. Residual Functional Capacity assessment

Olson contends that the ALJ did not tie her RFC assessment to evidence in the record. Specifically, Olson says that the ALJ did not explain why she found that Olson (1) could perform light work; (2) did not require more significant restrictions related to noise in the workplace; and (3) would not be off task due to his tinnitus. For the reasons that follow, none of these grounds warrant remand.

1. **Light work**

Light work requires, among other things, that a claimant be able to stand or walk for six hours in an eight-hour workday. *See* SSR 83-10. The agency physicians, Drs. Turner and Khorshidi, opined that Olson could perform medium work and could stand for six to eight hours per day. R. 104; R. 138. But the ALJ didn't adopt their opinions, and no other medical opinion addressed Olson's exertional limitations. As a result, Olson says that the ALJ needed to explain why she found that Olson could stand for six to eight hours per day.

The ALJ did not expressly tie Olson's restriction to light work to specific evidence in the record. But if that was error, it was harmless. Olson has not identified any unaddressed evidence that shows he would be entitled to more significant limitations. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (a claimant not entitled to a remand if he does not "identify medical evidence that would justify further restrictions"). The ALJ explained why she did not assign Olson more significant exertional limitations related to his back pain. She addressed Olson's subjective complaints and explained that they were not consistent with the gaps in treatment, his failure to follow up on referrals or complete physical therapy, and the lack of significant medical imaging findings. Olson does not identify any medical opinions that call for more restrictive exertional limitations, and the imposition of greater limitations than indicated by medical opinions is not grounds for remand. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

2. **Off-task time**

Olson contends that the ALJ erred in determining that Olson would not be off task during a workday. Olson testified that he is frequently distracted by his tinnitus, and he says that the ALJ did not explain why Olson would not be distracted by the constant ringing. But

Olson had the burden to show that his impairments would cause him to be off task. *See Summers v. Berryhill*, 864 F,3d 523, 527 (7th Cir. 2017). And Olson identifies no unaddressed evidence that supports a restriction related to off-task time. The ALJ addressed Olson's subjective complaints about his distractibility and explained that they were inconsistent with a lack of cognitive findings in examinations or any previous complaints about the issue. R. 21. And no doctors opined that Olson's tinnitus would cause him to be off task. Dr. Ruegemer, one of Olson's treating physicians, stated that he was unable to determine whether Olson's symptoms interfered with his ability to concentrate. But the ALJ addressed Ruegemer's opinion and concluded that his vague statement did not merit any restrictions. R. 22. Olson was represented by counsel, so he is presumed to have made his best case before the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). If there were records or opinions that supported Olson's testimony that his tinnitus caused him to be off task, he could have put them in the record.

### 3. Noise restrictions

The ALJ restricted Olson to working in environments with no more than moderate levels of noise. R. 19. But Olson contends that the ALJ erred by not adopting a more significant noise restriction, for three reasons. First, Olson says that the ALJ should have adopted the environmental restrictions identified by Dr. Turner, one of the agency physicians, who opined that Olson should avoid all exposure to noise. R. 126. But the ALJ addressed that restriction and concluded that it was inconsistent with the record, which included evidence that Olson had only mild hearing loss in his right ear and demonstrated good speech discrimination. The ALJ accepted Turner's conclusion that Olson had mild hearing loss that affected his ability to hear high frequencies. R. 126. But the ALJ was entitled to discount Turner's opinion because there was no evidence that Olson could function only in a noise-free environment.

9

Second, Olson contends that the restriction to moderate noise conflicts with the opinion of Dr. Ruegemer. Ruegemer opined that Olson would likely have trouble understanding oral communications "in the presence of constant background machinery noise or similar work environments." R. 539. But the ALJ addressed Ruegemer's opinion and concluded that it was consistent with a restriction to a moderate level of noise. A moderate noise intensity level is defined in the Selected Characteristics of Occupations as the level of noise in a department store, grocery store, or a fast-food restaurant at off-hours. *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, at D-2.[3] The noise caused by "constant background machinery" is more consistent with a "loud" level of noise, which is the amount of noise present in a can manufacturing department and near large earth-moving equipment. *See id.* Ruegemer's opinion does not suggest that it was necessary to limit Olson to "quiet" workplaces, such as a library, so restricting Olson to moderate noise was not error.

Third, Olson says that the ALJ ignored a statement from the agency's medical advisor, Naomi Kelly, who opined that Olson might require face-to-face communication to ensure understanding. R. 122. But Olson doesn't explain why this opinion is inconsistent with a restriction to a moderate noise level, or why a limitation to face-to-face communication would prevent him from doing the jobs the ALJ found he could perform. So Olson is not entitled to remand on this ground.

---

[3] *Available at* https://obflegal.com/httpdocs/files/SCO.pdf, at 616.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered May 11, 2022.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge